SERCARZ & RIOPELLE, LLP
810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019

1-212-586-4900
FACSIMILE 1-212-586-1234
www.sercarzandriopelle.com

ROLAND G. RIOPELLE
MAURICE H. SERCARZ*

*ADMITTED IN NY & NJ

June 13, 2014

BY ECF FILING

Hon. Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street, Rm. 755
New York, NY  10007

Re: United States v. Bonventre, et al.,
S10 10 Cr. 228 (LTS)

Dear Judge Swain:

    I respectfully submit this letter in further support of Mrs. Bongiorno's post-trial motions in the above-referenced case, and in reply to the Memorandum of Law filed by the government. For the reasons stated more fully below, and in order to preserve her appellate rights, Mrs. Bongiorno moves to dismiss all counts against her pursuant to Fed. R. Crim. P. 29(c).

    In addition, I join in all motions and arguments made by Mrs. Bongiorno's co-defendants, to the extent such motions and arguments may be applicable to Mrs. Bongiorno.[1] And I write specifically to reply to the government's opposition to Mrs.

---

[1] In its Brief, the government acknowledges that Mrs. Bongiorno's joinder in the motions of others is sufficient to preserve her rights with respect to "arguments of general applicability – such as the various defendants' arguments about the Government's jury addresses." Government Brief, p. 97. For the purpose of amplifying the record, Mrs. Bongiorno does join in all her co-defendants' motions, to the extent they are applicable to her, and she notes that the arguments made by her co-defendants about the improprieties of the government's jury addresses do, in many cases apply to her with equal force. For example, to the extent that Mrs. Bongiorno's co-defendants have argued that the prosecutor improperly acted as an unsworn witness and expert in criminality during the government's rebuttal summation (see, e.g., Perez Reply Memorandum at pages 20-21), such arguments are plainly applicable to Mrs. Bongiorno. Indeed, she explicitly made an objection to the government's rebuttal summation on this ground at the time of the prosecution's rebuttal. Tr. 11,741. The law is well established that an improper jury address can be the grounds for the grant of a new trial or a reversal, so the defendants' motion for a new trial on this basis is applicable to Mrs. Bongiorno, and if the Court were to find the conduct justified a dismissal of any charges on this ground, such a finding would be applicable to Mrs. Bongiorno. See United States v. Certified Env't Servs., Inc., 2014 WL 2198541 (2d Cir. May 28, 2014). But there is no point in Mrs. Bongiorno filing another 30 pages of briefing to address this behavior. Her co-defendants have addressed it at length, and Mrs. Bongiorno joins in all their arguments, to the extent they are applicable to her.

SERCARZ & RIOPELLE, LLP

Bongiorno's motion to dismiss the tax-related counts against her pursuant to Fed. R. Crim. P. 29(c).

### A.   The Tax Counts Must Be Dismissed

In its response to Mrs. Bongiorno's motion to dismiss the tax counts, the government argues that Mrs. Bongiorno's withdrawals from the "Special 1" and "Special 2" accounts were "thefts." Government's Brief, p. 109. But there was no evidence whatsoever to support such a theory. In fact, Mrs. Bongiorno's withdrawals were open and notorious, and the checks at issue were signed by her boss, whom all parties agree had the authority to sign the checks. So there is no basis whatsoever to conclude that the money Mrs. Bongiorno received as a result of cashing checks on the "Special 1" and "Special 2" accounts was stolen by Mrs. Bongiorno at the time the funds were withdrawn.

Instead, as we have argued previously, the withdrawals Mrs. Bongiorno made from the "Special 1" and "Special 2" accounts were all labeled "capital withdrawals" and were understood to be capital withdrawals by every government witness, including IRS Revenue Agent Dabney. Tr. 8360-63. And every witness to address the issue of capital withdrawals at the trial testified that capital withdrawals are not taxable, because withdrawing funds from a securities account is not a taxable event. Id. The testimony of the witnesses at trial uniformly established that trading in a securities account triggers a tax obligation -- withdrawing cash from an account does not. Tr. 8361-62; 10,106-07. That is a "settled truth" on the record before the Court. Government's Brief, p. 110. And it is undisputed that Mrs. Bongiorno correctly declared and paid taxes on *many millions of dollars* in securities trades in her accounts. AB-3000-1.

Another settled truth established by the Trial Record is that Bongiorno always had – according to her Madoff Account statements – sufficient funds in her accounts to support her capital withdrawals from the "Special 1" and "Special 2" accounts, so there was no proof that she had any reason to think that her withdrawals from the "Special 1" and "Special 2" accounts were anything other than capital withdrawals. And, as the Court is aware, negative balances in Madoff Securities accounts were routine, and "netting" accounts against each other at the time all a customer's accounts were closed at the Madoff firm was also routine. See, e.g. GX 105C-117. So the negative balances in Mrs. Bongiorno's "Special 1" and "Special 2" accounts prove nothing about her intent to evade income tax at the time the withdrawals were made.

At page 112 of its Brief, the government argues that the fact that Mrs. Bongiorno was concerned about the tax consequences of liquidating her Madoff Accounts at the time that Madoff Securities collapsed somehow demonstrates that she understood that the capital withdrawals she made from the "Special 1" and "Special 2" accounts were taxable. According to the government, the fact that the checks issued to Mrs. Bongiorno at the end of the Madoff Securities scheme bore the notation "CW" and that Mrs. Bongiorno "understood that these sums were taxable to her" rebuts her argument that capital withdrawals are not taxable income.

SERCARZ & RIOPELLE, LLP

      This argument ignores the facts proven about these withdrawals during the trial. As the government's own witnesses acknowledged, securities accounts are taxed based on the trades made in them. Tr. 7595; 8361-62. The government's witnesses described how trades were entered in Mrs. Bongiorno's accounts to generate the "cash" that was represented by the checks issued to her, all of which bore the notation "CW." Tr. 4428, 4432. Those trades generated taxable capital gains, and that was the genesis of her concern about her tax liability. Tr. 5471-72. The capital withdrawals represented by the checks were not taxable. The large trading gains generated by the trades entered in Mrs. Bongiorno's accounts when they were liquidated *were* taxable, and that was the basis of her concern.

      Indeed, the government's own evidence proved that Mrs. Bongiorno scrupulously paid her taxes (in amounts far in excess of the amounts she purportedly evaded) on the trading activity in her securities accounts. Tr. 10,152-56; GX 500-51 to 500-56; AB-3000-1. So her remark concerning her tax obligations at the time her accounts were liquidated proves absolutely nothing about whether Mrs. Bongiorno wilfully evaded the payment of income tax when she took capital withdrawals from the "Special 1" and "Special 2" accounts. Instead, it demonstrated her legitimate concern about paying her taxes in connection with the trades entered in her accounts, the proceeds of which were included in the checks issued to her.

      For all these reasons, as well as those stated in Mrs. Bongiorno's previous submissions in support of her Rule 29 motions, I respectfully request that the Court grant Mrs. Bongiorno's motion to dismiss Counts 25 through 30 of the indictment.

      Respectfully submitted,

Roland G. Riopelle

Cc: Jocelyn Courtney, Esq. and All Counsel (By ECF and email)